UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE PGS HOME CO. LTD,

Plaintiffs,

Case No. 19-mc-80139-JCS

**ORDER GRANTING MOTION TO QUASH OR MODIFY SUBPOENA**

Re: Dkt. No. 12

## I. INTRODUCTION

Twitter, Inc. ("Twitter") brings a Motion to Quash or Modify Subpoena ("Motion"), asking the Court to quash the subpoena issued to applicant PGS Home Co., Ltd. ("PGS") on July 29, 2019 by the Court under 28 U.S.C. § 1782. A hearing on the Motion was held on November 22, 2019 at 9:30 a.m. For the reasons stated below, the Motion is GRANTED.

## II. BACKGROUND

Twitter is a global information sharing and distribution platform committed to the free expression of hundreds of millions of monthly active users. Motion at 2. Twitter account holders can write short messages, or Tweets, of up to 280 characters, on the Twitter platform and can include photos, videos, and links to other Internet content in their Tweets. *Id.* Tweets posted on Twitter are public and may be viewed everywhere and by anyone. *Id.* Twitter account holders choose a handle (e.g., @handle), which may disclose their true identity or use a pseudonym. *Id.*

PGS is a corporation established and existing under the laws of Japan. Declaration of Tomohiro Kanda in Support of Ex Parte Application for Order Pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding) ("Kanda Decl.") ¶ 4. PGS builds homes in Japan and has over 300 employees. *Id.* ¶ 5. PGS performs services including house painting, solar power system sales, photocatalyst coating, general housing construction, apartment building, and

total home renovation. *Id*. PGS alleges that between March 31, 2019 and May 5, 2019, an unknown person or persons Tweeted the following statements about PGS using the Twitter account @yw3z3azZmv3Ps0Z with the display name of "PGS Home" (collectively, the "Tweets"):

> Tweet #1: "I've been asked to pay for the Air Cleaning of the exterior walls when they haven't completed it! Is this a scam? Be wary of #PGSHOM."

> Tweet #2: "They've painted the exterior walls without Air Cleaning them which is supposed to be done, I think that the paint will probably peel right off. I wonder if #PGSHOME will repair it then."

> Tweet #3: "They won't even deal with customers decently and even treat them like complainers while doing crappy construction. This is how they erase the problem, increasing the number of contracts and results, and creating a 'reliable company.' That's the way of #PGSHOME."

Kanda Decl., Exs. A, A-1.[1]

On May 24, 2019, PGS brought an ex parte application for an order pursuant to 28 U.S.C. § 1782 permitting discovery for use in a foreign proceeding (the "Application"). In a supporting declaration, PGS's attorney, Tomohiro Kanda, states that the Tweets constitute defamation and unlawful business interference under Japanese law. Kanda Decl. ¶ 9. He further opines that the Tweets were intended to harass PGS, citing the Twitter handle used by the anonymous poster, which displays as PGS Home and therefore comes up in Twitter search results for that company. *Id*. PGS did not submit evidence as to whether or not the speaker may have been a customer of PGS but counsel for PGS stipulated at oral argument that the content of the Tweets supports the conclusion that the individual who posted them was a customer of PGS.

---

[1] The print-outs of the Tweets attached to the Kanda Declaration reflect that they were originally in Japanese. Mr. Kanda provides English language translations of the Tweets on the attachments to his declaration. The Tweets were translated by Marianne Mu, who supplied a declaration in support of the Application attesting that she is fluent in both English and Japanese language. *See* Declaration of Marianne Mu in Support of Ex Parte Application for Order Pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding ¶ 4.

2

1    On July 26, 2019, after PGS had supplied an additional declaration by Mr. Kanda
2 identifying with greater specificity the information PGS sought in the subpoena, the Court granted
3 the Application. Order Granting Application for Order Pursuant to 28 U.S.C. § 1782 (Docket No.
4 8). In its Order, the Court gave Twitter thirty days from receipt of any subpoena served by PGS to
5 move to quash or modify such subpoena. *Id*. The parties met and conferred with regard to the First
6 Amendment implications of PGS's application. Declaration of Julie E. Schwartz in Support of
7 Twitter, Inc.'s Motion to Quash or Modify ("Schwartz Decl.") ¶ 3. Although PGS's counsel
8 agreed to narrow the scope of the subpoena to seek only basic subscriber information ("BSI"), the
9 parties were unable to reach agreement as to Twitter's First Amendment concerns. *Id*.

On August 28, 2019, Twitter brought the instant Motion, expressing concern that disclosure of the identity of the individual who posted the Tweets would chill speech protected under the First Amendment. In the Motion, Twitter highlights PGS's failure to offer any evidence that the Tweets are actually defamatory, noting that all of the Tweets appear to be about PGS's business practices and may constitute "protected opinions about PGS's business by an actual PGS customer." Motion at 1, 6.

In its Opposition, PGS argues that it has met the requirements for disclosure under 28 U.S.C. § 1782 and that the discretionary factors that courts consider in determining whether to grant an application point in favor of granting it. Opposition at 6. PGS contends the First Amendment concerns cited by Twitter do not justify granting the Motion because PGS has established that the statements are defamatory per se and constitute interference with a business relationship under Japanese law. *Id*. at 8. PGS also points out that the anonymous speaker used a Twitter handle that displays as PGS Home, arguing that this shows that the anonymous speaker is harassing PGS.

## III.  ANALYSIS

### A.  Legal Standards

Section 1782 provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or

3

> international tribunal . . . . The order may be made . . . upon the application of any interested person[.]

28 U.S.C. § 1782(a). Section 1782 permits district courts to authorize discovery where the following requirements are met: "(1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (citations omitted).

A litigant in a foreign action qualifies as an "interested person" under Section 1782. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004). Further, § 1782 does not require that a formal proceeding in the foreign jurisdiction is currently pending, or even imminent; rather, a court may permit discovery under § 1782 so long as a "dispositive ruling" by the foreign adjudicative body is "within reasonable contemplation." *In re Hoteles City Express,* No. 18-MC-80112-JSC, 2018 WL 3417551, at *2 (N.D. Cal. July 13, 2018) (quoting *Intel*, 542 U.S. at 256).

Even if the basic requirements of § 1782 are satisfied, however, a district court has wide discretion in deciding whether to permit discovery under Section 1782. *Intel*, 542 U.S. at 260-61. In exercising its discretion, a district court should consider the following factors: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding," (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance," (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the request is "unduly intrusive or burdensome." *Id*. at 264-65.

Where a § 1782 request seeks information revealing the identity of an anonymous speaker, courts have evaluated the potential chilling effect on First Amendment rights under the fourth *Intel* factor. *See In Re Ex Parte Application of Dr. Yuichiro Yasuda and Yu Mental Clinic*, No. 19-mc-80127 TSH, Order Denying Motion to Quash (Docket No. 14) at 5. In addition, courts in this District have looked to the good cause standard that governs discovery requests under Rule 26(d) of the Federal Rules of Civil Procedure in determining whether to order disclosure of anonymous

4

speakers under § 1782. *See In re Hoteles City Express,* No. 18-MC-80112-JSC, 2018 WL 3417551, at *3 (explaining that discovery under § 1782 is guided by the applicable standards found in the Federal Rules of Civil Procedure and looking to the good cause standard of Rule 26(d) to determine whether discovery of an anonymous speaker's identity should be permitted). In evaluating whether an applicant establishes good cause to learn the identity of an unknown party through early discovery, courts examine whether:

> (1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible.

*Id.* (quoting *OpenMind Solutions, Inc. v. Does 1–39*, No. 11–3311, 2011 WL 4715200, at *2 (N.D. Cal. Oct. 7, 2011) (citing *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578–80 (N.D. Cal. 1999)).

"A district court's discretion is to be exercised in view of the twin aims of [Section] 1782: providing efficient assistance to participants in international litigation, and encouraging foreign countries by example to provide similar assistance to our courts." *Nat'l Ct. Admin. of the Republic of Korea*, 2015 WL 1064790, at *2 (citing *Schmitz v. Bernstein Libehard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004)). The party seeking discovery need not establish that the information sought would be discoverable under the foreign court's law or that the U.S. would permit the discovery in an analogous domestic proceeding. *See Intel*, 542 U.S. at 247, 261-63.

**B. Discussion**

Twitter does not dispute that PGS has met the basic requirements for obtaining discovery under § 1782: PGS has introduced evidence establishing that it seeks discovery for use in a foreign tribunal – namely, civil litigation it intends to initiate in Japan against the anonymous Tweeter – and Twitter resides in this District. Likewise, the first three *Intel* facts point in favor of granting PGS's request. Twitter is not (and will not be) a participant in the foreign proceeding, there is no reason to believe that a Japanese court will not be receptive to the assistance PGS

5

requests from this Court, and there is no evidence in the record that suggests PGS is attempting to circumvent the rules of any foreign tribunal. PGS has also satisfied at least three of the "good cause" requirements, providing enough specific information to show that the anonymous speaker is a real person who could be sued if Twitter were to provide the requested BSI. The only remaining questions that must be addressed are: 1) whether PGS's allegations could survive a motion to dismiss, which would support a finding of "good cause"; and 2) whether the potential chilling effect under the First Amendment of ordering that the speaker be unmasked is outweighed by the harm to PGS of withholding the requested discovery.

### 1. Whether PGS's Allegations Could Survive a Motion to Dismiss

PGS seeks to assert two claims against the anonymous speaker: 1) a claim for defamation under Articles 709 and 710 of the Civil Code of Japan; and 2) a claim for intentional interference with business relations under Article 233 of the Civil Code of Japan. Declaration of Tomohiro Kanda in Support of PSG's Opposition to Twitter, Inc.'s Motion to Quash or Modify Subpoena "("Kanda Opposition Declaration") ¶¶ 9, 10. According to Mr. Kanda, PGS has viable claims for defamation and interference with business relations under Japanese law because "the Tweets are all false" and because the speaker has harassed PGS by using a Twitter handle that displays PGS's name. *Id*. ¶ 9. PGS has not, however, addressed the concern raised by Twitter that the Tweets may be "protected opinion about PGS's business by an actual PGS customer." *See* Motion at 6. In particular, Mr. Kanda does not state whether the opinions of a dissatisfied customer can form the basis for either of the claims PGS seeks to assert in Japan; nor does PGS dispute that such speech does not necessarily constitute defamation, either because the statements that are factual in nature may be true or because communications that are made without malice by one interested party to another may be protected.[2] Given that the content of the Tweets support the conclusion that the

---

[2] PGS cites to *Wilens v. Doe Defendant No. 1* to suggest that the Tweets are defamatory per se, but the facts of that case are distinguishable. No. 3:14-CV-02419-LB, 2015 WL 4606238, at *15 (N.D. Cal. July 31, 2015), report and recommendation adopted, No. 14-CV-02419-LHK, 2015 WL 5542529 (N.D. Cal. Sept. 18, 2015). *Wilens* includes the following passage:

> The charge of a crime is defamatory on its face. *See Boyich v. Howell*, 221 Cal.App.2d 801, 802 (Cal.Ct.App.1963). Defamation also can result from a charge that a plaintiff is guilty of an act of dishonesty or

speaker was a customer of PGS and that most of the statements are in the form of opinions about services PGS provided, it is unclear whether PGS's claims could survive a motion to dismiss in a civil action in Japan. Therefore, the Court concludes that PGS has not demonstrated good cause for permitting the requested discovery.

### 2. Whether the potential chilling effect under the First Amendment of ordering that the speaker be unmasked is outweighed by the harm to PGS of withholding the requested discovery

Even if PGS has demonstrated that it could survive a motion to dismiss in a civil action in Japan, the Court must also consider the potential chilling effect of ordering disclosure of the Tweeter's identity. "It is well established that the First Amendment protects the right to anonymous speech." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at \*3 (N.D. Cal. Nov. 9, 2011) (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995)). Moreover, the Ninth Circuit has held that "[a]lthough the Internet is the latest platform for anonymous speech, online speech stands on the same footing as other speech—there is 'no basis for qualifying the level of First Amendment scrutiny that should be applied' to online speech." *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (citing *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997)). "As with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation . . . [or] concern about

---

has some defect of character that reflects on the person's integrity as to bring him into disrepute. *Slaughter v. Friedman*, 32 Cal.3d 149, 153–54 (1982). Falsely charging a person with a violation of confidence reposed in him or with treachery to his associates also is actionable per se. *Dethlefsen v. Stull*, 86 Cal.App.2d 499, 502 (Cal.Ct.App.1948).

*Id.* In that case, however, the statements at issue directly stated that the plaintiff had engaged in illegal conduct (which was described in some detail) and the speaker also said his intent was to cause the plaintiff "agony." Thus, there was no need to address the possibility that this speech fell under a qualified privilege under California law that applies to "a communication, without malice, to a person interested therein, (1) by one who is also interested." Cal. Civ. Code section 47(c). In contrast, the factual statements in the Tweets here relate to the adequacy of the services PGS provided. The closest the Tweeter comes to accusing PGS of a crime is the question "is this a scam?", which is not a statement of fact and is a far cry from the statements in *Wilens* that were found to be defamatory per se**.**

7

social ostracism.'" *Id.* (quoting *McIntyre*, 514 U.S. at 341–42).

These considerations apply in the context of § 1782 applications when a foreign litigant seeks the assistance of a federal court in the United States. *See In Re Yuichiro Yasuda and Yu Mental Clinic*, No. 19-mc-80127 TSH, Order Denying Motion to Quash (Docket No. 14) at 5 (citing *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011)). Further, in conducting the First Amendment balancing that must be performed before permitting discovery that has implications for protected speech, it is not enough to consider the adequacy of the allegations; rather, courts are required to go beyond the pleadings to determine if there is an evidentiary basis for concluding that the requested discovery is appropriate. *See Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975 (N.D. Cal. 2005) ("It is not enough for a plaintiff simply to plead and pray. Allegation and speculation are insufficient. The standards that inform Rule 8 and Rule 12(b)(6) offer too little protection to the defendant's competing interests.").

In addressing the First Amendment implications of PGS's discovery request, the Court looks to cases that have addressed similar requests in the context of civil discovery. In that context, courts in this District have ruled that in order to unmask an anonymous speaker, a litigant must "persuade[] the court that there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff." *Music Grp. Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015) (citing *Highfields*, 385 F. Supp. 2d at 975-76). If a plaintiff makes this showing, the court must then "assess and compare the magnitude of harms that would be caused" to the plaintiff's and defendant's competing interests if the court ordered disclosure of the speaker's identity. *See id.*

In *Highfields*, the court addressed whether it should enforce a subpoena by the plaintiff, Highfields Capital, L.P., seeking disclosure of the identity of an "unidentified defendant" who had posted comments, which "[could] be interpreted as expressing disapproval or criticism of Highfields Capital – mocking its arrogance and condescension and suggesting that its high-priced investment advice is quite vulnerable to being both biased and wrong" - using the screen name "highfieldscapital." 385 F. Supp. 2d at 972, 975. The plaintiff sought to assert claims against the

8

anonymous speaker for violation of its trademark rights, for unfair competition and defamation. *Id*. at 975. The court described the competing interests that must be considered in this context as follows:

> Most of the claims that plaintiff seeks to pursue in the federal court in Massachusetts sound, essentially, in plaintiff's interest in preventing competitive commercial exploitation of its property (name) and in protecting itself from unfair commercial abuse. These are, of course, completely legitimate interests. It is of some analytical moment, however, that the rights plaintiff seeks to defend are not as vulnerable or precarious as the rights defendant seeks to protect-and not as close to the central societal values that animate our Constitution.
>
> These differences in the interests and rights that are in tension when a private civil plaintiff seeks to discover the identity and address of an anonymous internet speaker inform the tests that courts have applied in this kind of setting.

385 F. Supp. 2d at 975. The court went on to adopt a two-part test, asking first whether there is a "real evidentiary basis" for believing that the anonymous speaker has engaged in wrongful conduct that caused real harm to the party seeking discovery; and second, if that threshold requirement is met, balancing the harm resulting from an order requiring disclosure against the harm resulting from an order denying the request for disclosure. *Id*. at 975-976. In that case, the court concluded that the statements at issue were obviously intended to be ironic and that the potential chilling effect of disclosure outweighed the interests of the plaintiff in asserting claims against the anonymous speaker.

Here, the primary evidence in the record is the Tweets themselves, which fall in the category of commercial speech. As such, the Court finds that it is appropriate to apply the *Highfields* test in considering the possible chilling effect that would result from granting PGS's application.[3] *See Music Grp. Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015) ("The Ninth Circuit has indicated that the *Highfields* test is one of middling rigor, appropriate where, as here, the challenged speech falls somewhere beneath the most protected realm of 'political, religious, or literary' discourse; is, in significant part, 'commercial

---

[3] Although Twitter cited to *Highfields* in the Motion, PGS did not address that case in its Opposition brief. At oral argument, counsel for PGS stipulated that the *Highfields* test applies here.

9

speech' that enjoy 'lesser' protection; but may be more safeguarded than pure 'fighting words and obscenity,' which is 'not protected by the First Amendment at all.'") (quoting *Anonymous Online Speakers*, 661 F.3d at 1173, 1175–76; *Art of Living*, 2011 WL 5444622 at *5).

Applying the *Highfields* test, the Court concludes that PGS has not shown a "real evidentiary basis" that the Tweets caused real harm to PGS and even if it has, the harm to commercial speech of requiring disclosure outweighs the harm to PGS. With respect to the harm, it appears from the content of the Tweets that the poster is a customer of PGS. Read in context, it is obvious that the speaker's references to the possibility of a "scam" and accusations that the company does "crappy construction" and treats customers "like complainers" are not so much statements of fact but simply a "rant" by a dissatisfied customer and therefore would be unlikely to cause real harm to PGS. But even if these Tweets did cause real harm,[4] that harm is outweighed by the First Amendment concerns related to disclosing the speaker's identity. The statements in the Tweets constitute legitimate commercial speech that enjoys First Amendment protection. *See Music Grp. Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d at 985 (holding that Tweets that directly and indirectly criticized the plaintiff's business practices and products were legitimate commercial speech protected by the First Amendment). As the court in *Music Group* found, "[t]hese are views in which other members of the public may well be interested—and that defendant has a right to express anonymously." *Id*. Therefore, the Court finds that PGS's request for identifying information is unduly burdensome under *Intel.*

## IV. CONCLUSION

For the reasons stated above, the Motion is GRANTED.

**IT IS SO ORDERED.**

Dated: November 25, 2019

JOSEPH C. SPERO
Chief Magistrate Judge

---

[4] PGS asserts its sales have dropped 15-20% since the Tweets. Kanda Opposition Decl. ¶ 10. However, aside from the bare fact that the drop in sales followed the Tweets, PGS has not provided any evidence or articulated any specific facts showing that the Tweets *caused* the drop in sales. Therefore, the Court does not place great weight on this evidence.